IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ANALICIA K.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ANALICIA K., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

REBECALICIA H., APPELLANT.

Filed July 15, 2025.    No. A-24-833.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Jared L. Holzhauser for appellant.

Patrick F. Condon, Lancaster County Attorney, and Alisha Jimenez for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

INTRODUCTION

Rebecalicia H. appeals the order of the separate juvenile court of Lancaster County, terminating her parental rights to her child. Upon our de novo review, we affirm the juvenile court's order.

BACKGROUND

Rebecalicia is the mother of Analicia K., born September 2013. At the time of Analicia's birth, Rebecalicia had an ongoing juvenile case involving her son, Emilioray K., who was adjudicated in November 2011 and placed outside the home. See case No. JV11-886.

Analicia tested positive for methamphetamine when she was born and the State filed a motion for emergency temporary custody in case No. JV11-886. The juvenile court entered an

- 1 -

order on September 11, 2013, placing Analicia in the temporary legal and physical custody of the Department of Health and Human Services (DHHS). She was placed in the home of Ralph Chandler and Tonya Chandler. The State also filed a second supplemental petition in case No. JV11-886 to adjudicate Analicia based on Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2024).

On September 27, 2013, the State filed a motion for termination of Rebecalicia's parental rights to Emilioray and Analicia. A few days later Rebecalicia pled no contest to the allegations in the second supplemental petition. The juvenile court accepted her plea and adjudicated Analicia.

Rebecalicia relinquished her parental rights to Emilioray on December 19, 2013, and the State filed a motion for leave to withdraw the motion for termination of parental rights as to Analicia. The court sustained the motion.

On August 25, 2014, a couple weeks before Analicia's first birthday, she was placed with Rebecalicia for the first time. On December 4, 2014, DHHS recommended a successful case closure and case No. JV11-886 was closed.

Several weeks after case No. JV11-886 closed, Rebecalicia reached out to the Chandlers, who had an in-home daycare, to see if they would provide daycare for Analicia. The Chandlers agreed to provide daycare for Analicia when Rebecalicia was working or attending school. At the time, Rebecalicia was working nights, so Analicia would stay overnight with the Chandlers. Before long, Analicia was staying at the Chandler's home most of the time. Within a few months of the first juvenile case being closed, she was living with the Chandlers 80 to 90 percent of the time. Analicia would only spend a few hours per week with Rebecalicia.

Rebecalicia's contact with Analicia continued to decrease over time. Rebecalicia would stop by the Chandlers' house on occasion. She missed major events in Analicia's life, including birthdays and major holidays, which was very disappointing for Analicia. Between 2020 and 2021, there was an 11-month period where Rebecalicia had no contact with Analicia. The Chandlers never kept Analicia from her mother and were very accommodating when Rebecalicia wanted to spend time with Analicia.

In June 2021, Analicia was diagnosed with diabetes. She was in the hospital for 8 days and during that time the Chandlers received training on how to care for Analicia and manage her diabetes. At the time of the termination hearing, Analicia's blood sugar levels continued to be difficult to manage and she needed to be closely monitored.

In 2022, the State learned that Analicia had been living with and in the care of the Chandlers and Rebecalicia had not been parenting her. The discovery led to the current juvenile case being filed.

On December 23, 2022, the State filed a motion for ex parte order for emergency temporary custody, which the court granted. DHHS formally placed Analicia, who was 9 years old at the time, with the Chandlers. The affidavit attached to the motion alleged, in part, that Rebecalicia had little to no contact with Analicia for the past 12 months, nor had she provided care for her on a regular basis for 6 years prior to the filing of that motion, she had a history of substance use, and in 2021 was charged with possession of a controlled substance (methamphetamine), later amended to an attempted possession of a controlled substance.

On December 23, 2022, the State also filed a petition to adjudicate Analicia pursuant to § 43-247(3)(a), followed by an amended petition on March 1, 2023, alleging that she lacked proper parental care by reason of the faults or habits of Rebecalicia, and was in a situation dangerous to

life or limb or injurious to her health or morals based upon the following: Analicia's sibling Emilioray had previously been adjudicated, Rebecalicia failed to correct the adjudicated issues, and Rebecalicia relinquished her rights to Emilioray in December 2013; Analicia was previously adjudicated and in December 2014, the juvenile court found Rebecalicia had successfully completed the rehabilitative plan and the juvenile court case was closed; since November 2021, Rebecalicia had not maintained consistent contact with Analicia or her caregivers and had failed to provide adequate supervision and care for her; and Rebecalicia had failed to provide a safe, stable, and sanitary environment for Analicia.

On May 17, 2023, following an adjudication hearing, the juvenile court found the allegations in the amended petition to be true and adjudicated Analicia based on § 43-247(3)(a).

Rebecalicia filed an appeal of the adjudication order. The juvenile court entered an order continuing a disposition hearing pending the outcome of the appeal.

On January 9, 2024, this court issued an opinion affirming the juvenile court's adjudication of Analicia. See *In re Interest of Analicia K.*, No. A-23-460, 2024 WL 88549 (Neb. App. Jan. 9, 2024) (selected for posting to court website). The mandate issued on March 20, 2024. A disposition hearing followed and a case plan was adopted and ordered by the juvenile court on May 13. The case plan required Rebecalicia to maintain contact with the caseworker, obtain and/or maintain safe and stable housing, obtain and/or maintain a legal source of income, participate in individual therapy, attend Analicia's medical appointments and abide by the medical providers' recommendations, complete parenting classes, participate in family therapy, and submit to drug testing.

On July 19, 2024, the State filed a motion for termination of parental rights, alleging that statutory grounds to terminate existed under Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016), and that terminating Rebecalicia's parental rights was in Analicia's best interests.

A termination hearing took place in September and October 2024. Analicia had just turned 11 years old at the time of the hearing. Several caseworkers testified for the State, as well as Rebecalicia's individual therapist at the time, who also conducted two co-occurring evaluations; a family therapist; and Ralph Chandler. Rebecalicia testified on her own behalf.

The evidence showed that during the time Analicia's adjudication was on appeal and no court-ordered case plan had been entered, DHHS offered a number of services to Rebecalicia. Those services included case management, a walk-through of Rebecalicia's home, drug testing, supervised visitation, family therapy, and a co-occurring evaluation. The assigned caseworker from DHHS made it clear to Rebecalicia what she needed to do to be reunified with Analicia and Rebecalicia indicated she understood. The goals identified at the time included that Rebecalicia address her substance use and mental health concerns, maintain safe and stable housing, and be able to meet Analicia's behavioral and medical needs. The caseworkers regularly talked with Rebecalicia about what the goals were and what she was doing to meet the goals. Team meetings also continued while the appeal was pending.

A co-occurring evaluation was initially offered to Rebecalicia in December 2022 when this case was filed. Rebecalicia did not submit to a co-occurring evaluation until September 2023 because she refused to participate for some time as she did not feel the substance use portion of the evaluation was necessary. The evaluation recommended individual therapy with a mental

health and substance abuse licensed therapist, family therapy, a parenting class, and medication management.

Throughout the case, Rebecalicia claimed she was participating in individual therapy but refused to give the caseworkers the name of her therapist or sign a release of records to allow DHHS to verify her therapy records. Accordingly, the caseworkers were unable to confirm Rebecalicia was seeing an individual therapist.

Rebecalicia testified that she was periodically engaged in individual therapy and admitted that she refused to sign a release of records for DHHS. She claimed she did not know she had to participate in individual therapy in addition to family therapy. She had been engaged in family therapy with Analicia on a regular basis since September 2023. A few months before the termination hearing began, Rebecalicia started working with a DHHS approved individual therapist.

The caseworkers were also unable to verify Rebecalicia was receiving medication management as recommended by the co-occurring evaluation, because she would not sign a release of her records.

Rebecalicia's supervised visitation attendance was consistent at times and inconsistent at other times. All of Rebecalicia's parenting time either has been in a therapeutic setting or fully supervised. It has never progressed to a less structured level.

At one point during the case, Rebecalicia's supervised visits were increased to take place almost daily. However, Analicia started having an increase in negative behaviors and "acting out" after visits. Based on the recommendation of Analicia's therapist, visits were reduced to 1 to 2 times per week.

In October 2023, the Chandlers decided they could no longer foster Analicia because she would get physically violent against them and in front of their daycare children, especially after visits with Rebecalicia. Analicia has had threatening and aggressive behavior since age 4 or 5 and it had gotten progressively worse as she got older and stronger.

In March 2022, Rebecalicia was charged with possession of a controlled substance (methamphetamine). In October, the charge was amended to an attempt charge and Rebecalicia pled no contest.

On June 4, 2024, Rebecalicia tested positive for methamphetamine. At the time she attributed the positive test result to cold medicine she had taken and denied any methamphetamine use. At trial, she testified that she had "no idea" why she tested positive.

Rebecalicia's caseworker at the time of the termination hearing testified that she did not successfully participate in drug testing. Another caseworker testified that her overall participation in drug tests was sporadic and it could not be said that she demonstrated sobriety.

Between December 2023 and March 2024, Rebecalicia did not participate in any drug tests, and at the time of the termination hearing she continued to miss drug tests. Between October 2023 and June 2024, she had at least 55 "no shows" for testing.

The State also presented evidence that Rebecalicia did not successfully maintain safe and stable housing. The first time she allowed her caseworker to do a walkthrough of her home was in late 2023. She only allowed access to the first floor and she gave inconsistent explanations as to why certain portions of the home were not accessible. There was also a period when Rebecalicia would not allow her caseworker into her home. Another walkthrough occurred in July 2024.

DHHS was also unable to verify whether Malachi Stricker, Rebecalicia's boyfriend, was living in her home. Stricker was with Rebecalicia at the time of her arrest in 2022 and was not approved by DHHS to live with her. At the time of the termination hearing, Stricker listed Rebecalicia's home as his place of residence. Rebecalicia denied that he continued to live with her and testified that he last lived with her in December 2022.

Rebecalicia's caseworker at the time of the hearing testified that the issues that led to Analicia's removal had not been corrected because there were concerns about Rebecalicia's home, recent missed drug tests, a positive drug test in June 2024, and failure to attend all of Analicia's medical appointments. She also testified that the case had never reached a point where DHHS considered recommending reunification between Rebecalicia and Analicia. The caseworker did not believe reunification was in Analicia's best interests, despite recognizing that Rebecalicia had completed a few services successfully. She also testified that it was in Analicia's best interests to terminate Rebecalicia's parental rights.

Following the termination hearing, the juvenile court entered an order finding that the State proved the statutory grounds alleged in the motion for termination by clear and convincing evidence and that terminating Rebecalicia's parental rights was in Analicia's best interests.

## ASSIGNMENT OF ERROR

Rebecalicia assigns that the juvenile court erred in finding that she was an unfit parent and that it was in Analicia's best interests to terminate her parental rights.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Statutory Grounds for Termination.*

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

Rebecalicia does not assign that the juvenile court erred in finding that statutory grounds existed under § 43-292(2), (6), and (7), and admits that subsection (7) was met. However, for the sake of completeness, we set out how § 43-292(7) was met.

Subsection (7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al., supra.* In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests' step of the analysis. *In re Interest of Becka P. et al., supra.*

Analicia was removed from the home in the present case on December 23, 2022. Since the day she was removed, she has never returned to Rebecalicia's care and has remained in out-of-home placement. At the time the State filed the petition to terminate parental rights on July 19, 2024, Analicia had been placed outside the home for 18 months out of the most recent 22 months. Therefore, Analicia had been out of the home for more than 15 of the most recent 22 months; the statutory requirement for termination under § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.* Because we find that the State presented clear and convincing evidence that a statutory ground to terminate existed under § 43-292(7), we need not address the other statutory grounds.

*Parental Unfitness and Best Interests.*

Rebecalicia assigns that the juvenile court erred in finding that she was unfit and that it was in Analicia's best interests to terminate her parental rights.

Under § 43-292, in addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts. *Id.*

Rebecalicia argues she was not given enough time to comply with the court-ordered case plan before the motion to terminate her parental rights was filed. A case plan was entered in May 2024, after the appeal from the adjudication order was final, and the motion to terminate was filed 2 months later.

Although there were only 2 months between the court-ordered case plan and the motion to terminate, DHHS had been offering Rebecalicia services as early as December 2022, when the initial petition to adjudicate was filed. DHHS offered and attempted to put services into place for Rebecalicia that were necessary for Analicia to be placed back in her care. DHHS made it clear to her what steps she needed to take, allowing her to start working on certain goals while the appeal was pending. However, Rebecalicia did not take advantage of many of the services offered.

Regardless of how much time Rebecalicia was given to comply with a court-ordered plan, there is other evidence to support a finding that termination of Rebecalicia's parental rights is in Analicia's best interests. Analicia was 11 years old at the time of the termination hearing and had only been in the full-time care and custody of Rebecalicia for 3 or 4 months of her life. Analicia

- 6 -

was first placed with the Chandlers in foster care when she was 1 week old and she remained in foster care until just before her first birthday. Analicia was returned to her mother's care in August 2014. A few months after Analicia returned to Rebecalicia's home, Rebecalicia asked the Chandlers to provide daycare, which quickly led to them providing the majority of Analicia's care and then to living with the Chandlers full time. By the time this case was filed in December 2022 and Analicia was formally placed in the Chandlers' home, Analicia had lived with the Chandlers continuously for well over 6 years. The Chandlers discontinued foster care of Analicia in October 2023 and Analicia had been placed in other foster homes since that date.

Not only had Rebecalicia voluntarily not provided a home for Analicia, but she had also failed to keep in regular contact with her. There was an 11-month period in 2020 and 2021 where Rebecalicia had no contact with Analicia. She missed several major events in Analicia's life, including her birthdays and major holidays. Rebecalicia would tell Analicia she would call or visit at a certain time and then not follow through, which was very disappointing to Analicia every time. When Analicia was first diagnosed with diabetes, it was the Chandlers who learned how to care for her.

When Rebecalicia began having supervised visits with Analicia, Analicia would often behave negatively after the visits and the visits were reduced at one point based on Analicia's behavior following visits. Rebecalicia's visitation has always been in a therapeutic setting or fully supervised. It has never been changed to a less formal setting.

Rebecalicia's drug use continues to be an issue. She tested positive for methamphetamine in June 2024. This positive test was almost 11 years after Analicia was born with methamphetamine in her system. Prior to the positive test in June 2024, Rebecalicia had not been submitting to testing for many months and her failure to report for testing continued to be a problem at the time of the termination hearing.

Analicia is Rebecalicia's second child to be adjudicated. Emilioray was adjudicated in November 2011 and placed outside the home. Analicia relinquished her rights to him in December 2013. She was given a second chance to properly parent Analicia when the State returned Analicia to her care and dismissed the motion for termination in the first juvenile case. However, Rebecalicia was not ready to properly care for Analicia at that time, as she returned Analicia back to the care of the Chandlers. Likewise, she was not in a position at the time of the termination hearing to have Analicia safely placed in her custody, despite the numerous services offered and the numerous years that have past.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Further, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.* Rebecalicia has failed to put herself in a position to properly parent her child. Analicia has been suspended in foster care since December 2022 in this case and had not been in Rebecalicia's care for years before that. It appears Rebecalicia will not become a fit and capable parent any time soon. Analicia deserves stability and security in her life. She also needs someone who can consistently monitor her health due to her diabetes. She should not be suspended in foster care when her mother is unable to rehabilitate herself. Accordingly, based on

our review of the evidence, we agree with the juvenile court that Rebecalicia was unfit and that terminating her parental rights was in Analicia's best interests.

## CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds to terminate Rebecalicia's parental rights to Analicia existed under § 43-292(7) and that terminating her parental rights was in Analicia's best interests. The juvenile court's order is affirmed.

AFFIRMED.